## S. S. BENTON, ALIAS ATLANTA BENTON,

### v.

## BROTHERHOOD OF RAILROAD BRAKEMEN.

*Life Insurance—Mutual Benefit Association—Amendment of Constitution—Marriage of Beneficiary.*

1.   Upon a bill filed by a mother to recover the sum named in an insurance policy issued to her son, the same having been paid to his widow, this court holds that the written direction upon said policy that the amount, in case of death, should be paid to his mother, can cut no figure, in view of the fact that before the death of assured the constitution of the organization had been so changed as to require payment, in case of death, to the wife or issue, unless otherwise ordered, no such order having been made.

[Opinion filed May 20, 1892.]

APPEAL from Circuit Court of Knox County; the Hon. ARTHUR A. SMITH, Judge, presiding.

This was a bill in equity brought by the appellant against

the appellee, seeking to recover the sum of $1,000 on an insurance policy issued by the appellee to her son, Fletcher Benton, deceased, in his lifetime, and alleged by the bill to have been assigned by her son to her in his lifetime, or by him directed to be paid to her under and in accordance with the constitution and by-laws of the appellee.

The appellee in its answer does not deny the validity of the policy, but contests the claimed right of appellant to receive the benefits due thereunder, and insists that the benefits belong to the widow of the deceased, Minnie A. Benton, to whom the appellee had paid the amount of the policy, as it had a right and ought to do. The cause was tried by the court on an agreed state of facts as follows:

"That a policy was issued by defendant to Fletcher Benton on the 8th day of May, 1888. That he, by writing on the back of the policy on the day of its issuance, directed it to be paid to Mrs. S. S. Benton, his mother, and complainant herein, at his death, and that such direction was in keeping with the constitution and by-laws in force at the time. That on the 5th of October, 1888, he married Minnie A. Osgood and she survived him. That in October, 1887, the brotherhood adopted a constitution and by-laws which were in full force at the time said policy was issued and at the time said complainant was designated as the beneficiary thereof. That in October, 1888, the said constitution and by-laws were duly revised and amended, and both said constitution and the certificate of membership or policy are in evidence. That after the death of said member, on the 1st day of May, 1889, the association paid to his widow the sum named in the policy. That they received the proof of death on the 1st of January, 1889, and also a demand of payment by Mrs. S. S. Benton, the beneficiary named on the back of the policy, on the 1st of March, 1889, by which time defendant had received notice of the survival of the widow. That payment should be made to one or the other."

The constitution of the appellee was amended and changed in October, 1888 (Art. 11, Sec. 1), so as to give at

the death of a brother in good standing, to the persons or person named in the benefit policy of the deceased brother, the sum of $1,000.

Art. 13, Sec. 1, was also enacted at a regular meeting of the brotherhood in October, 1888, to read as follows :

" Any brother desiring to make a transfer of his benefit policy can do so in writing on the back of his policy and in the form prescribed for that purpose, to be attested by the secretary of the lodge under the lodge seal. Should a second transfer be desired, a duplicate policy shall be issued by the G. S. and T., upon the return of the old policy. Where marriage is contracted after the issuance of policy, and said policy becomes payable through death, it shall be paid to the widow, or in event of her death, to their joint issue, if any, unless otherwise ordered. All transfers of benefit policies shall be recorded in the Membership and Policy Register of the Subordinate Lodge and in the Grand Register."

It appears that prior to the amendment of the constitution in October, 1888, the benefits were payable only to the person to whom the benefits were assigned by the assured on the back of the policy, but by the change in the constitution, the benefits were at the death of the assured made payable to the widow, " or in the event of her death to their joint issue, if any, unless otherwise ordered."

Messrs. JAMES McKENZIE and PEPPER & SCOTT, for appellant.

Messrs. WILLIAMS, LAWRENCE & BANCROFT, and M. J. DOUGHERTY, for appellee.

MR. JUSTICE LACEY. It is held in this State that the beneficiary under a policy of assurance, where no contracts issue in accordance with the constitution and by-laws of the order, gets no vested interest in the policy during the life of the assured, and that the laws and constitution of the order may be changed at the will of the members in the

Benton v. Brotherhood of R. R. Brakemen.

regular way as prescribed by the rules of the order, so as to limit and abridge the interests of the beneficiaries.    Martin v. Stubbings, 126 Ill. 387.    This principle of law, however, we do not understand to be controverted by counsel for appellant.    But the contention between the parties and their counsel seems to be concerning the effect of the amendment of the constitution in October, 1888, and the marriage of deceased after the issuance of the certificate to him and his assignment thereof to his mother.    It is contended on the part of counsel for the appellant that the amendment of the constitution and by-laws in no way affected the previous assignment of the benefits named in the certificate to appellant, and that unless changed by him subsequently to the amendment by the appellee of its by-laws in October, 1888, the original assignment is valid and the money due to appellant under the certificate.    The contrary of this view is held by counsel for appellee.    By them it is insisted that the new by-law giving the benefits to the widow, unless otherwise ordered, had the effect to set aside and nullify the former appointment by deceased of the benefit to his mother.    The decision of the case hinges on the determination of this point.

Was a new assignment necessary after the enactment of Art. 13, Sec. 1?

We must hold with the appellee on this question.    After the revision of the constitution of appellee in October, 1888, a complete change was made in regard to the payment of benefits called for in certificates.    Primarily the benefits would go to the wife, unless, indeed, the holder of the certificate should by affirmative act order otherwise, and this rule prescribed by appellee, we think, was intended to cover cases where certificates of benefits had been issued and assigned by the beneficiary, as well as to certificates thereafter to be issued by appellee.    It was intended, no doubt, to compel a member who had married subsequently to the issuance and assignment of his certificate and after the adoption of the new article of the constitution, to affirmatively act if he desired to cut off his wife and immediate

family from the benefits of the association in case of his death. If he did not do this, then the benefits due under the certificate and the constitution would, by operation of Art. 13, Sec. 1, go to his wife, and in case of her death to their joint children. It was not intended, we think, to leave the old appointment of the benefits made by the member under the old constitution in force. Under the old constitution, an appointment of the benefits was compelled to give the certificate force and effect, and the appointment of the beneficiary was made for that purpose and of necessity. Under the new regulation the benefits went to the deceased wife without appointment or assignment. A complete change was made in the constitution of the association in regard to the appointment of benefits, and applied, as we think, to old certificates and policies, as well those issued before as after the adoption of the new rule. The assured not having exercised his rights to assign his policy to his mother after the adoption of the amended constitution, the amount due thereunder should go to his wife, to whom it was rightfully paid by appellee.

We therefore see no error in the action of the court below in rendering a decree dismissing appellant's bill. The decree of the court below is therefore affirmed.

*Decree affirmed.*